IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 23-cv-03428-CNS-KAS

DAVID E. HILL,

    Plaintiff,

v.

CHRIS BINA,
T. RODRIGUEZ,
JAIME AUTEN,
WILLIAM RESTO,
KIESHA RESTO,
SEANA MALTEZO, and
D. OBA,

    Defendants.

---

## ORDER

This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction. ECF No. 4. For the reasons explained below, the motion is DENIED.

### I.    SUMMARY FOR PRO SE PLAINTIFF

On December 26, 2023, you filed a motion for temporary restraining order (TRO) and preliminary injunction, seeking an order from this Court directing Defendants to prescribe Farxiga and empagliflozin (Jardiance) to treat your chronic kidney disease.[1]

---

[1] Farxiga is the market name for the drug dapagliflozin. The drug empagliflozin, on the other hand, is sold under the brand name Jardiance. *See* ECF No. 24-1 (Drinkard Decl.), ¶¶ 7–8; *see also Mitsubishi Tanabe*

1

ECF No. 4. Defendants filed their opposition to your TRO on April 15, 2024. ECF No. 24. They argue that your TRO should be denied because you are already being prescribed empagliflozin, which is an effective drug to treat chronic kidney disease. They also argue that you cannot succeed on the merits of your case because you failed to exhaust your Administrative Remedies *prior to* filing your federal lawsuit, and therefore, this Court must deny your TRO.

After considering the arguments raised in your TRO, the Court is denying your request for injunctive relief. The Court will explain why it is doing so further below, including a discussion of the legal authority that supports this conclusion.

## II.   BACKGROUND

Plaintiff is a federal inmate housed at the Administrative Maximum Facility (ADX) in Florence, Colorado. *See* ECF No. 5 (Am. Compl.) at 2. He was diagnosed with chronic kidney disease in June 2017.[2] ECF No. 24-1 (Drinkard Decl.), ¶ 10. On December 26, 2023, he filed his initial Prisoner Complaint, and three days later, he filed his Amended Prisoner Complaint. His allegations concern medical treatment related to his chronic kidney disease.

Plaintiff asserts two Eighth Amendment claims. Am. Compl. at 8. The first is against Defendants Chris Bina, T. Rodriguez, and Jaime Auten, alleging deliberate indifference to Plaintiff's serious medical needs when they denied him Farxiga to treat his stage III chronic kidney disease. *Id.* The second is against Defendants William Resto, Kiesha

---

*Pharma Corp. v. Sandoz, Inc.*, 533 F. Supp. 3d 170, 208 (D.N.J. 2021). Both drugs treat kidney disease. *See* ECF No. 24-1 (Drinkard Decl.), ¶¶ 10–12.

[2] It appears Plaintiff has been incarcerated since 2002. ECF No. 24-6 at 3.

Resto, Seana Maltezo, and D. Oba, alleging deliberate indifference to Plaintiff's serious medical needs when they delayed giving him empagliflozin, another drug used to treat chronic kidney disease. *Id*. at 8.

Plaintiff sued each Defendant in their respective individual and official capacities. *Id.* at 2–3. He seeks a declaration that Defendants violated the Eighth Amendment and an injunction ordering Defendants to provide him with Farxiga and empagliflozin. *Id*. at 3, 7. He also seeks monetary damages pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Id*.

Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction largely mirrors the Amended Complaint: he asks the Court to order that Defendants prescribe him Farxiga and empagliflozin, although his primary focus appears to be on Farxiga. *See* ECF No. 4 at 1, 10.

After filing his TRO on December 29, 2023, Defendant Maltezo—Plaintiff's Federal Bureau of Prisons (BOP) medical provider—prescribed Plaintiff empagliflozin. Drinkard Decl., ¶ 14. At an appointment on February 20, 2024, Plaintiff told Defendant Maltezo that he was "comfortable with his medication regimen." *Id.*, ¶ 16.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes a district court to enter preliminary injunctions and issue TROs. Fed. R. Civ. P. 65(a), (b). The decision whether to issue a TRO is committed to a district court's sound discretion. *Allen W. Hinkel Dry Goods Co. v. Wichison Indus. Gas Co.*, 64 F.2d 881, 884 (10th Cir. 1933); *see also* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (3d ed. 2023) ("The

issuance of a temporary restraining order is a matter that lies within the discretion of the district court."). The procedure and standards for determining whether to issue a TRO mirror those for a preliminary injunction. *See Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No. CIV. A. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citation omitted). "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018).

A party seeking preliminary injunctive relief must satisfy four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015). A party seeking an injunction must demonstrate that "all four of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted." *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014). Of the four factors, "a showing of probable irreparable harm is the single most important prerequisite" for a preliminary injunction or TRO, and "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260–61 (10th Cir. 2004) (quotation and citation omitted).

In addition to the four factors, a district court must also consider whether the movant's request falls within one of the "disfavored injunction" categories. Those categories of disfavored injunctions include those that will (1) alter the status quo, (2) mandate an affirmative act by the defendant, or (3) afford all the relief that the movant could expect to win at trial. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2004). A request for disfavored injunctive relief "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). Where a movant requests a disfavored injunction, the movant "must make a strong showing both on the likelihood of success on the merits and on the balance of the harms." *Colo. v. E.P.A.*, 989 F.3d 874, 884 (10th Cir. 2021) (quotation omitted).

## IV.   ANALYSIS

The Court has reviewed Plaintiff's motion and Amended Complaint, Defendants' opposition, and the various exhibits attached to the opposition. ECF Nos. 4, 5, 24. For the reasons below, the Court finds that Plaintiff has failed to meet his burden of showing that a TRO is warranted.

### A.  Likelihood of Success on the Merits

Before a district court may issue a preliminary injunction, a plaintiff must establish a substantial likelihood of prevailing on the merits of his claims. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). However, "the determination of a motion for a preliminary injunction and a decision on the merits are

5

different." *Valdez v. Applegate*, 616 F.2d 570, 572 (10th Cir. 1980)). A plaintiff generally need only "establish a reasonable probability of success, not an overwhelming likelihood of success.'" *Atchison, T. & S. F. Ry. Co. v. Lennen*, 640 F.2d 255, 261 (10th Cir. 1981) (citation and quotations omitted). But where, as here, a plaintiff attempts to alter the status quo and mandate action from the defendants, a plaintiff must make a "strong showing" with respect to the likelihood of success on the merits. *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

In this case, Plaintiff requests relief that would alter the status quo rather than preserve it and also require Defendants to take affirmative (mandatory) action. For these reasons, the Court finds that Plaintiff's requested injunctive relief "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *See Schrier,* 427 F.3d at 1259, 1261.

In terms of Plaintiff's likelihood of prevailing on the merits of his claims, Defendants argue that his claims are subject to dismissal because he failed to exhaust his Administrative Remedies prior to filing this suit. ECF No. 24 at 5. The evidence submitted by Defendants shows that, although Plaintiff began the exhaustion process, he did not complete it prior to filing this lawsuit. ECF No. 24-1 (Herbig Decl.), ¶¶ 17–27.[3]

Plaintiff alleges in his Amended Complaint that Defendants "obstructed" him from exhausting his Administrative Remedies because the Regional Director failed to respond to his appeal in time. Am. Compl. at 12 ("Hill then appealed to the Regional Director

---

[3] Jarad Herbig is a Paralegal Specialist employed by the BOP. Herbig Decl., ¶¶ 1–2. He is responsible for, among other things, overseeing and evaluating inmates' Administrative Remedy requests. *Id.*, ¶ 2.

who[se] office failed to provide a response by the June 6, 2023, due date. As a result of the Regional Director[']s failure to respond, Hill's ability to exhaust Administrative Remedies *have been obstructed by BOP officials*." (emphasis added) (capitalization omitted)).

But as Defendants point out, pursuant to 28 C.F.R. § 542.18, Plaintiff should have treated the failure to respond as a denial and proceeded with the next step in the Administrative Remedy Program. *See* 28 C.F.R. § 542.18 ("If the inmate does not receive a response" by the "Regional Director within 30 calendar days," the "inmate may consider the absence of a response to be a denial at that level."); *see also United States v. Christopher*, No. 18-CR-00059 DKW, 2021 WL 1113632, at *3 (D. Haw. Mar. 23, 2021) (explaining that § 542.18 provides that a regional director shall respond to an appeal within 30 calendar days and, if an inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level) (quotations, citations, and alteration omitted). Thus, the Regional Director's failure to respond did not obstruct Plaintiff from completing the required Administrative Remedies.[4] And because Plaintiff provided no other evidence of obstruction, he is unlikely to prevail on the merits of his case.

Accordingly, Plaintiff has failed to make a strong showing that he is likely to succeed on the merits of his claims. This factor weighs against injunctive relief.

---

[4] The record shows that Plaintiff has filed a total of 250 Administrative Remedy requests while in custody with the BOP. Herbig Decl., ¶ 16. That is his right, and the Court does not fault him for pursuing certain remedies. The Court merely points out this fact to show that Plaintiff clearly is familiar with the procedures for Administrative Remedies.

### B. Irreparable Harm

Irreparable harm means that the claimed injury "must be both certain and great"; it is not enough to be "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (citation omitted). Generally, a harm is not irreparable when the losses may be compensated by monetary damages. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). The movant must show that the "injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (citation omitted) (emphasis in original); *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (showing irreparable harm is "not an easy burden to fulfill").

Plaintiff is currently receiving empagliflozin to treat his chronic kidney disease, Drinkard Decl., ¶¶ 10–14, which is one of the requests in his TRO. *See* ECF No. 4 at 1. He even told his BOP medical provider that he was comfortable with his medication regime. Drinkard Decl., ¶ 16. Even if Plaintiff argues that he will suffer harm if he does not receive Farxiga specifically—either in lieu of empagliflozin or together with empagliflozin (it is not clear)—he has provided no evidence that empagliflozin alone is insufficient.

In sum, Plaintiff has failed to show that any harm is imminent, great, and irreparable. This factor weighs against injunctive relief.

### C. Balance of Hardships and Public Interest

"To be entitled to a preliminary injunction, the movant has the burden of showing that 'the threatened injury to the movant outweighs the injury to the other party under the

8

preliminary injunction.'" *Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1113 (D. Colo. 2021) (quoting *Heideman*, 348 F.3d at 1190).

Here, since the filing of Plaintiff's TRO, Defendants began prescribing and administering empagliflozin. Drinkard Decl., ¶¶ 10–16. And it appears Plaintiff is satisfied with his current medication regime. *Id.*, ¶ 16 ("On February 20, 2024, Hill advised NP Maltezo that he was 'comfortable with his medication regimen.'"). Plaintiff's interest in obtaining the requested injunction is therefore substantially weakened. By contrast, Defendants have an interest in maintaining their ability to make medical care decisions for inmates—here, deciding which of two medications to give an inmate—independent of this Court's interference. *See Campbell v. Milyard*, No. 09-CV-01041-CMA-KLM, 2010 WL 5110095, at *8 (D. Colo. Oct. 15, 2010), *report and recommendation adopted*, No. 09-CV-01041-CMA-KLM, 2010 WL 5102993 (D. Colo. Dec. 8, 2010) ("[T]he Court's interference with Defendants' day-to-day decisions regarding how to manage this Plaintiff, particularly to the extent that Plaintiff's requested relief would deviate from how Defendants manage all other inmates, would significantly undermine their discretion and autonomy."), *aff'd sub nom. Campbell v. Singh*, 496 F. App'x 774 (10th Cir. 2012).

Relatedly, interfering with prison officials' reasonable discretion and autonomy is generally not in the public interest. *See generally Hinkle v. Beckham Cnty. Bd. of* Cnty. Comm'rs, 962 F.3d 1204, 1232 (10th Cir. 2020) ("[B]ecause prison officials have certain expertise that judges lack, the [Supreme] Court stressed that the judiciary must give prison officials considerable discretion before disturbing their policies."). Moreover, because Farxiga is not listed on the BOP National Drug Formulary, Drinkard Decl., ¶ 7,

9

granting Plaintiff's injunctive relief would require ordering the BOP to add a new drug to the formulary. The Court therefore finds that it would not serve the public interest to entertain Plaintiff's TRO merely because he prefers a different drug to treat his chronic kidney disease than the one his prison medical providers are currently prescribing to him.

Accordingly, the Court cannot say that the balance of harms and public interest factors weigh in favor of injunctive relief.

\* \* \*

Because the Court has found that Plaintiff failed to prove any of the TRO factors—each of which independently would be sufficient to deny the TRO—Plaintiff's request for injunctive relief is not warranted. *Vill. of Logan*, 577 F. App'x at 766.

## V.  CONCLUSION

Consistent with the above analysis, Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction, ECF No. 4, is DENIED.

DATED this 18th day of April 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge